JAMES M. HAYES ET AL., Appellees, v. DORA OYER, Appellant.

Drainage: HIGHWAYS: DAMAGES. The owner of a servient estate is
1   bound to take the surface water naturally flowing thereon; and under the statutes providing for the drainage of highways the township authorities, if necessity requires, may construct culverts across the highway and dig ditches on either side thereof, and so long as they do not thus divert the water from its natural course they are within their rights in so doing; and although the water is thus collected in a more closely confined channel and discharged upon the servient estate, no damages will be implied from any resulting injury.

Same: WATERCOURSE: ACQUIESCENCE: OBSTRUCTION. Where the owner
2   of a servient estate many years ago constructed a ditch across his land connecting with the system of drainage for the highway provided by the township authorities, thus conducting the water in the natural course of drainage across his land, and defendant maintained the same for a long series of years prior to the commencement of this action to restrain the obstruction of the highway ditches, such conduct amounted to acquiescence in the system of drainage thus established, and the same constituted a water course which defendant was not at liberty to obstruct.

Same: DRAINAGE EASEMENT: USER. Where defendant and her grantors
3   knowingly permitted the construction and maintenance of highway ditches, and for a long series of years maintained a ditch connecting therewith across her land, which was the servient estate, she could not deny the existence of an easement for the maintenance of the highway ditches which discharge the surface water upon her land, on the ground that an easement cannot be shown by proof of user alone.

Same: DRAINAGE SYSTEM: ESTABLISHMENT BY CONSENT. Where the
4   owners of both the dominant and servient estates unite in the construction of a drainage system, which is continued for more than

the statutory period, the scheme becomes perpetual and cannot be changed without the consent of all parties interested.

*Appeal from Linn District Court.*—HON. F. O. ELLISON, Judge.

TUESDAY, APRIL 14, 1914.

SUIT in equity by certain township trustees to enjoin the defendant from maintaining a dam. in a ditch on the south side of a highway adjoining defendant's land, thereby casting the water upon the highway and into ditches alongside thereof, making the said highway muddy, sticky, and at times impassable. Judgment for damages was also asked, and a mandatory writ was demanded for the removal of the obstruction. The defendant's answer was a general denial, and on the issues thus tendered the case was tried to the court, resulting in a decree for plaintiffs, without any allowance for damages, and defendant appeals.—*Affirmed.*

*F. L. Anderson* and *Rickel & Dennis,* for appellant.

*Voris & Haas,* for appellees.

DEEMER, J.—Plaintiffs are the trustees of a certain civil township, in Linn county, Iowa, within which township defendant owns a tract of land abutting upon a county highway. This highway was laid out about the year 1860, and in the year 1865 a wooden culvert was put across the road north of defendant's land to carry the surface water coming from at least 1,000 acres of land lying north and northwest from defendant's land across the road and onto defendant's land, in a course which nature provided. The flow was slow, and there were no natural banks, as to a stream, on either side of the culvert, for the land was low and flat, and the water spread out on defendant's land several rods in width. De-

fendant's land was the lowest in the vicinity, and her estate, in so far as surface water is concerned, is the servient one.

The culvert spoken of was put in at approximately the lowest place where the highway crossed the depression, was maintained and the highway graded accordingly until about the year 1906, when a cement culvert was put in in place of the old wooden one, and of approximately the same size, save that the grade of the highway was increased a little, and at the time of the commencement of this suit the highway was some two feet higher than the surrounding land. The traveled part of the highway was rounded, and on either side was a ditch, something like eighteen inches in depth. Something like thirty-five years before the commencement of this suit the then owner of the land now belonging to defendant constructed a ditch leading from the old culvert southwesterly over the land now owned by defendant. This ditch was from one to two feet deep and eight or ten feet wide. This ditch was there when defendant purchased the land, about nineteen years ago, and has been maintained ever since. Before this ditch was dug or plowed, the surface water spread out over the defendant's land, and the ditch was to confine it to a more narrow channel, and to reclaim some of the land under water.

In times of wet weather surface water has constantly flowed through the culvert and down the ditch. Shortly before the bringing of this suit, and on the 30th day of March, 1911, defendant, without permission from any one, closed up the ditch at the north line of her farm by erecting a dam across the north end of the ditch, and filling in for some distance below. This dam and the filling was brought up to a level with the surrounding land; but it had the effect of filling the ditches on either side of the highway, making the road soft and muddy. The water at times was practically on a level with the top of the grade, and its presence caused a falling away and crumbling of the soil. There is not a great

deal of dispute regarding the facts, and the matters already stated are well established.

Defendant says that she had the right to defend herself against surface water; that neither the trustees, the township, nor the county authorities had any right to cast the water upon her land in the way they did; that they thereby increased the flow to her damage; and that no easement of any kind existed by reason of user, or otherwise, authorizing the flow of the water upon her land in any other way or in greater quantities than nature itself provided. By section 1556 of the Code, and sections 1532-a and 1533 of the Code Supplement, township trustees have charge and supervision of township highways, and it is made the special duty of the highway authorities to use "strict diligence in draining the surface water from public roads to its natural channel, and to this end they may enter upon adjoining land for the purpose of removing obstructions from such natural channel that impede the flow of such water."

1. DRAINAGE: highways: damages.

As already observed, defendant owns the servient estate, and her land was bound to take the water which naturally flowed thereon. The township authorities had authority, and it was their duty under the statute, to provide for the drainage of surface water from the highways. This of necessity compelled the building and maintenance of culverts across the roads, and the digging of ditches on either side thereof, and, so long as they did not divert surface water from its natural course, they were strictly within their rights in putting in the culverts, and digging the ditches, which were constructed at the point in question. This of necessity caused the water to be collected and to be discharged on the land now owned by the defendant, and, if any damage was done, it was *damnum absque injuria*. *Myers v. Priest*, 145 Iowa, 81; *Cech v. City*, 147 Iowa, 247.

Aside from this, it appears without dispute that defendant's grantor, after the construction of the culvert and the

ditches, dug a ditch across the land now owned by defendant,

2. SAME: water-course: acqui-escence: ob-struction.

connecting it up with the water coming through the culvert, and carrying it in the general course that nature provided, south-westerly across his land, and that this ditch was dug more than thirty-five years ago; that it was maintained by him and by defendant, who has occupied the land for nineteen years, down until about the time of the commencement of this suit, when the dam was constructed, and the filling made. This conduct on the part of the defendant and her grantor amounted to acquiescence on their part in the establishment of the culvert and ditches, and an implied agreement that the water should be turned therefrom across the land. By reason thereof, it became a water course which defendant was not at liberty to disturb. *Hull v. Harker*, 130 Iowa, 190; *Brown v. Armstrong*, 127 Iowa, 175; *Dorr v. Simmerson*, 127 Iowa, 551; *Parizek v. Hinek*, 144 Iowa, 563; *Brown v. Honeyfield*, 139 Iowa, 414; *Falcon v. Boyer*, 157 Iowa, 745; *Schofield v. Cooper*, 126 Iowa, 334; *Vannest v. Fleming*, 79 Iowa, 638.

Defendant's contention that plaintiff's claim to an ease-ment, which, it is said, is founded on user alone, cannot be established by mere proof of the user has no application.

3. SAME: drain-age easement: user.

It is true that under the present Code, section 3004, an easement cannot be established by proof of mere user alone. But plaintiffs here have proved much more than mere user, and knowledge thereof on the part of the defendant and her grantors. She or they not only had knowledge thereof, but they actively participated in the scheme for taking care of the water by digging a ditch on their own land, and connecting it up with the ditch in the highway, which the culvert was made to cross. This was done more than thirty-five years ago, and the situation remained practically the same down until shortly before the bringing of this suit.

To such facts, the statute relied upon does not apply. Originally there was a natural easement across defendant's

land because it was the lower estate, and, when the owners

4. Same: drainage system: establishment by consent.

of both the dominant and servient estates join in a scheme of drainage which was continued for more than the period of the statute of limitations, this scheme becomes perpetual, and could not be changed without the consent of the owners of the land. The new channel or ditches take the place of the original ones, and themselves constitute a water course which will be protected and enforced. This is familiar law, sustained by the following, among other, cases: *Mason City R. R. v. Board,* 144 Iowa, 10; *Chicago & N. W. R. R. v. Sac County,* 142 Iowa, 607. As the ditch became, in effect, a water course, defendant had no right to dam it up. *Wharton v. Stevens,* 84 Iowa, 107; *Dorr v. Simmerson,* 127 Iowa, 551.

That damage was done to the highway by the building of the dam, and the filling of the ditch, is well established. The dam caused the water to stand in the ditches at either side of the road, and to remain until evaporated, or until it disappeared by percolation. Its presence caused the traveled part of the road to become sticky and muddy, and also to crumble and fall.

The decree has ample support in the testimony, and it must be, and it is—*Affirmed.*

Ladd, C. J., and Gaynor and Withrow, JJ., concurring.