I. BESLER, Appellant, v. JOSEPH GREENWOOD, Appellee.

**WATERS AND WATERCOURSES:** Natural Watercourses—Enjoining
1  **Obstructed Tile.** A landowner who lays his tile in the general course of natural drainage, and discharges the same at his boundary line into a natural watercourse, may enjoin the adjoining landowner from so obstructing said natural watercourse as to impede the flow of water from the tile. (See Book of Anno., Vol. 1, Sec. 7736.)

**WATERS AND WATERCOURSES:** Obstruction of Tile—Damages.
2  Evidence held insufficient to establish a claim for damages consequent on the obstruction of a drainage tile.

**Headnote 1:** 40 Cyc. pp. 648, 656. **Headnote 2:** 40 Cyc. p. 654.

*Appeal from Dubuque District Court.*—D. E. MAGUIRE, Judge.

FEBRUARY 8, 1927.

Action in equity, to restrain defendant from obstructing the flow of surface water, and for damages. From a judgment

dismissing the petition the plaintiff appeals.—*Affirmed in part; reversed in part.*

John J. Kintzinger, for appellant.

Hurd, Lenehan, Smith & O'Connor, for appellee.

VERMILION, J.—The plaintiff and defendant own adjoining lands. The land of both parties immediately involved is flat bottom land, with but slight variation in elevation. That of the plaintiff, appellant, lies nearer the hills which drain onto it, and is, generally speaking, slightly higher than that of appellee. It is clear from the testimony that the ordinary drainage of surface water is naturally from appellant's land onto the land of appellee, and that it followed two natural depressions or swales. One of them, at about the point where it left appellant's land, connected with another swale on appellee's land, parallel with the division line, and the latter extended thence across the land of appellee to a well defined watercourse. That these swales served to collect and carry away the surface water from the adjacent lands, and were themselves natural watercourses, with which neither party could interfere to the injury of the other, is well settled. *Vannest v. Fleming,* 79 Iowa 638; *Wharton v. Stevens,* 84 Iowa 107; *Hull v. Harker,* 130 Iowa 190; *Miller v. Hester,* 167 Iowa 180.

<span style="float:left">1. WATERS AND WATERCOURSES: natural watercourses: enjoining obstructed tile.</span>

The character of these natural waterways has, in the course of years, changed from mere swales or depressions to ditches, with more or less well defined banks, and with a greater depth than they naturally had. So far as appears, this was, in the main, brought about naturally, as the result of erosion, following the cultivation of the soil, although there is evidence of some intentional changes made in the ditch across appellee's land.

About ten years before the trial below, appellant laid a line of tile along the course of one of the swales on his land, which discharged at the line of the division fence between his land and that of appellee. It is not entirely clear whether the tile discharged immediately into the ditch on appellee's land parallel with the fence, or into a ditch in the swale leading from appellant's land. The precise condition at that point at the time the tile drain was constructed, is not shown. It does appear, how-

ever, without substantial dispute, that the tile stopped at the fence line, and had a free discharge into an open ditch. At the time of the trial, the opening of the tile was some eighteen inches or more below the surface of the ground. There is no testimony tending to show that there was, at the time the tile was laid, or had previously been, any artificial change made in the character or depth of the ditch at the point where the tile discharged. The ditch at that point would clearly appear to have been "the result of the action of the water in accord with nature's laws," and to have been a natural watercourse. *Vannest v. Fleming,* supra; *Wharton v. Stevens,* supra.

I. Appellant complains that appellee, by filling up the ditch at various places below the point of discharge of the tile drain, has caused the water to stand in the ditch at that point above the tile outlet, with the result that the surface water has failed to drain away from his land through the tile, and that the water was thereby caused to back up through the tile onto his land, to his damage.

It is well settled, both by statute and at common law, that appellant had a right to drain his land in the general course of the natural drainage by constructing a covered drain discharging the water that would naturally flow at that point into a natural watercourse or depression, whereby the water would be carried away into another natural watercourse. Section 1989-a53, Code Supplement of 1913 (Section 7736, Code of 1924); *Vannest v. Fleming,* supra; *Wharton v. Stevens,* supra; *Hull v. Harker,* supra; *Pohlman v. Chicago, M. & St. P. R. Co.,* 131 Iowa 89; *Parizek v. Hinek,* 144 Iowa 563; *Schlader v. Strever,* 158 Iowa 61.

It is fairly established that the tile drain discharged at a point where there was a natural watercourse. It is equally clear that, at the time the drain was constructed, and until the appellee placed obstructions in the ditch below the point of its discharge, the ditch was sufficient to, and did, carry away such water as flowed from the tile.

It is not disputed that appellee, sometime before the action was commenced, placed an obstruction in the ditch on his land, consisting of straw which was held in place by posts driven in the ditch and a pole or timber placed across it, and which was used as a means of crossing the ditch. This obstruction was

removed, prior to the trial. It appears, however, that at another point debris and limbs of trees were either placed or permitted to be in the ditch, and, to some extent, obstructed the flow of the water, and that appellee had laid tile in his land, with laterals crossing the ditch, and that the dirt from these tile ditches more or less interfered with the flow of the water. It is shown that from some or all of these causes the water in the ditch stood above the mouth of appellant's tile. To just what extent this would prevent the free flow of water from appellant's land through the tile it is impossible to say; but that it would so impede it to some extent—depending, of course, on the level of the water and the fall of the tile drain—is clear. It is shown that the standing water in the tile would result in the deposit of sediment and the gradual filling up of the tile. We think this is a situation against which appellant had a right to complain, and for which he was entitled to relief by injunction.

It appears that appellant's use of the tile drain and its discharge at the place and in the manner shown had been acquiesced in by the owner of the servient estate for nearly ten years. It is unnecessary to put appellant's right upon the ground of prescription. We think, under the record, that he had a right to so discharge the water from his land. But the fact of his long unmolested use of the drain is corroborative of his claim of an original right to so construct and use it.

II.   Appellant makes a claim for damages to his land, resulting from the alleged obstruction to the flow of water from his tile drain. As we have said, the extent to which the water 2. WATERS AND was backed up in the tile by reason of obstruc-WATERCOURSES: tions in the open ditch below its outlet is by no obstruction of tile: damages. means certain. It does appear, however, that, during the trial, the tile was dug up some eight or nine feet back from the opening, and was found to be stopped up with a gunny sack. How, when, or by whom this was placed there is not shown. That it would stop the flow of water through the tile is admitted. There was testimony that it was not rotted; and also testimony tending to show that it could not have been put in through the outlet of the tile, because of the presence of willow roots in the tile and the condition surrounding the outlet. Whether the tile was also entirely filled with willow roots where it was dug up was a matter of dispute. Appellant's land was

subject to overflow, and the evidence showed that at such times the collection of debris at the woven-wire fence between his land and appellee's had resulted in making the level of the ground at the fence line higher than that back of it, thus preventing the escape of the water over the surface. This fact and the condition of the tile would fully account for the failure of the water to drain from appellant's land during the time complained of. His claim for damages cannot be sustained, and in that respect the judgment below is affirmed.

Appellant was entitled to an injunction restraining appellee from so obstructing the flow of water in the ditch into which the tile emptied as to prevent the free flow of the water from the tile drain.

The judgment is—*Affirmed in part; reversed in part.* ·

EVANS, C. J., and STEVENS, FAVILLE, and DE GRAFF, JJ., concur.