H. V. DODD, Appellant, v. MILO AITKEN et al., Appellees.

No. 44840.

DECEMBER 12, 1939.

OPINION MODIFIED AND REHEARING DENIED APRIL 13, 1940.

Thornell, Thornell & Nichols, for appellant.

Genung & Genung, for appellees.

MITCHELL, J.—The ditch, out of which this controversy arose, is a continuance of Honey Creek, as it comes out of the Nishna Botna River bottom located near the town of Anderson in Fremont county, Iowa. In 1911 or 1912, the owners of all of the land which now belongs to the plaintiff, Dodd, and to the defendants got together for the purpose of arranging the drainage as it affected their lands, and it was agreed to straighten Honey Creek as it flowed west through what is known as the Miller land. This was done by plowing a ditch 2 or 3 feet deep and letting the water wash it out, this process was continued until the channel was around 25 feet wide and 10 to 12 feet deep. About twenty-five years ago a lateral ditch was constructed down from the southwest corner of what is known as Taylor Lake emptying into Honey Creek. In 1921 a dyke, which most places is 2½ feet in height although at places is 5 feet high, was built along the south bank of the new ditch.

. Now for the relative position and ownership of the lands with reference to the drainage system. A plat marked Exhibit 1 (One) was introduced in evidence and by agreement of the parties was certified to this court. We start at a highway which runs along the east side of the lands involved in this drainage arrangement. The land west of this highway belonged at the time the original scheme of drainage was started to a Mr. Greenwood, who was the father of Mrs. William Shuffer. Practically all of the land to the south of Honey Creek belonged to W. B. Miller, now deceased, and who was the father of the defendants Mrs. Aitken and Mrs. Schaaf; and this was also true of the lands for a quarter of a mile north of Honey Creek. The land directly north of the Miller land was owned by one Charles Fichter, who was one of the predecessors in title to the plaintiff herein. To the north of Honey Creek in Section 33 was what was known as Taylor Lake; this was originally owned by the plaintiff. Honey Creek west of the highway is located on what

was originally the Miller land, now owned by the defendants Aitken and Schaaf.

There is little if any water in Honey Creek most of the time, it is only when exceedingly heavy downpour comes that there is any trouble. At different times the record shows that there have been rains of 4, 5 and 6 inches, and when these occur Honey Creek overflows and damages the crops on the surrounding land.

It is the claim of the plaintiff that the dyke on the south side of Honey Creek forces the water north out of its natural course, to this the defendants reply that the system of drainage including the dyke was agreed to by the property owners when it was constructed about twenty years ago and that the plaintiff had knowledge of this at the time he purchased the land, and as a further defense they plead an estoppel, in that in 1937 plaintiff was allowed by these defendants to build a new ditch from Taylor Lake across their land and emptying into Honey Creek.

In 1937 apparently there was a flood in this district, and part of the dyke on the south side of Honey Creek was washed out. This action was commenced in equity to enjoin the repairing of this dyke, the lower court refused to grant the relief prayed for and the plaintiff, Dodd, has appealed.

It must be kept in mind that even the appellant does not claim that the straightening of Honey Creek was not done by mutual consent. His only objection is to the dyke on the south side of Honey Creek.

Dodd lived in this country all his life. He traveled the road where he could see the dyke, his land is only about 700 feet from the dyke. In addition to this in 1937, he made an agreement with the Aitken and Schaaf parties to rebuild over their land the ditch that comes down from Taylor Lake and empties into Honey Creek.

This court has had before it, in the case of Hayes v. Oyer, 164 Iowa 697, 146 N. W. 857, the identical question and a great many of the same circumstances as the case at bar. In that case the same question was raised as has been raised here by the appellant. That is, that you could not prove user or adverse possession by mere user alone. In that case, 164 Iowa, l. c. 700, 701, 146 N. W. 858, this court said:

"* * * it appears without dispute that defendant's grantor, after the construction of the culvert and the ditches, dug a ditch across the land now owned by the defendant, connecting it up with the water coming through the culvert, and carrying it in the general course that nature provided, southwesterly across his land, and that this ditch was dug more than thirty-five years ago; that it was maintained by him and by defendant * * * down until about the time of the commencement of this suit, when the dam was constructed, and the filling made. This conduct on the part of the defendant and her grantor amounted to acquiescence on their part in the establishment of the culvert and ditches, and an implied agreement that the water should be turned therefrom across the land. By reason thereof, it became a watercourse * * *.

"Defendant's contention that plaintiff's claim to an easement, which, it is said, is founded on user alone, cannot be established by mere proof of the user has no application. It is true that under the present Code, section 3004 [now Section 10175, Code of Iowa 1935] an easement cannot be established by proof of mere user alone. But plaintiffs here have proved much more than mere user, and knowledge thereof on the part of the defendant and her grantors. She or they not only had knowledge thereof, but they actively participated in the scheme for taking care of the water by digging a ditch on their own land, and connecting it up with the ditch in the highway, which the culvert was made to cross. This was done more than thirty-five years ago, and the situation remained practically the same down until shortly before the bringing of this suit. To such facts, the statute relied upon does not apply."

This court in a very similar case passed upon the question of estoppel. We quote from Brown v. Armstrong, 127 Iowa 175, 177, 102 N. W. 1047:

"Where a dyke between two adjoining landowners was originally constructed by plaintiff's grantor, and she and her grantor had acquiesced for many years in the system of drainage of the land constructed, and had in fact devised and planned it, plaintiff was estopped to claim that defendant should drain the waters of a pond, or the overflow therefrom, in a different manner.

"The defendant further pleaded that the system of drain-

age existing when this suit was commenced was established long years ago by the consent and with the acquiescence of plaintiff's grantors, and that whatever rights she might otherwise have had have been abandoned by her and her grantors. He also claims that the dyke or dam between plaintiff's and defendant's land was constructed by plaintiff's grantors, and that he (defendant) has acquired the right to have the water cast back on plaintiff's land.

"The rules of law for such cases are well understood. While surface water has been spoken of in books as a common enemy, it is well established in this State that when water, no matter what its character, flows in a well-defined course, be it only in a swale, and seeks discharge in a neighboring stream, its flow cannot be arrested or interfered with by one landowner to the injury of another. * * *

"On the other hand, the owner of the dominant estate may by consent, either express or implied, estop himself from relying upon these rights, or he may so abandon his rights as that the owner of the servient estate may acquire a counter easement to have the water turned back upon the dominant estate."

And so in the case at bar, here was a system of drainage in a neighborhood which had been worked out by the property owners themselves, and, as in the cited cases, the owners of the property that appellant purchased not only had knowledge of it but actively participated in the scheme for taking care of the water. In addition to this Dodd lived in the community, he could see with his own eyes the dyke, and through the years, almost twenty, never complained until after they had permitted him to dig a new ditch across appellee's land. It necessarily follows that the lower court was right and its decree must be and it is affirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.